**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAVOND HILL,** | : | **CIVIL ACTION** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 25-4773** |
| **HENSLEY,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                                 **March 5, 2026**

**MEMORANDUM**

Before the Court is pro se Plaintiff Lavond Hill's motion for a temporary restraining order and preliminary injunction ("Motion"), seeking, among other things, a Court order requiring Defendants to provide him with certain medical treatments and accommodations for a back injury he sustained during an altercation with a correctional officer at the Pennsylvania State Correctional Institution, Phoenix ("SCI Phoenix") where he is currently housed, and to change his housing assignment. Preliminary injunctive relief is an extraordinary remedy, especially when the party seeking such relief is asking for mandatory relief that goes beyond preserving the status quo. Here, Hill seeks mandatory relief, meaning he asks the Court to order Defendants to do something they were not otherwise doing before the events leading to this case. However, Hill has not carried his heavy burden of showing that his right to relief is indisputably clear. Therefore, the Court must deny his motion.

1

## I.    Factual Background

### A.    Mental Health and Housing

Mr. Hill is an inmate at SCI Phoenix who suffers from mental health issues.[1] As a result, he is currently housed in the Intensive Management Unit ("IMU")/Diversionary Treatment Unit ("DTU"), which is a specialized housing unit for inmates who require intensive mental health or substance abuse treatment.[2] On several occasions, he has also been temporarily housed in a Psychiatric Observation Cell ("POC"), which is used for "inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property."[3]

Hill alleges certain Defendants have encouraged and continue encouraging him to commit suicide.[4] On July 31, 2025, the same day Hill filed a prison grievance, Correctional Officer ("CO") Salwen told Hill to "kill yourself" twice.[5] Later that day, Hill informed Ms. Randall he felt suicidal, and he was admitted into the POC.[6] On August 25, 2025, CO Salwen again told Hill to "kill yourself," after which, Hill attempted suicide by hanging himself in the yard.[7] He was hospitalized for six days as a result.[8] On October 7, 2025, Hill was hospitalized after swallowing a razor "after being encourage[d] to do so by prison official, Clausen."[9]

---

[1] Am. Compl., ECF No. 28 ¶¶ 16–17. The Court refers to the complaint filed at ECF No. 28 as an "Amended Complaint" merely for ease of reference, but the Court acknowledges that it is not truly an amended complaint. Rather, it is a second filing of the same civil complaint which was docketed at ECF No. 14. *See* Pl.'s Mot. Correct Record, ECF No. 44 at 2. Hill refiled the complaint to ensure the attachment of certain exhibits, which were attached to the Amended Complaint per the Court's order. *See id.*; *see also* Order Granting in Part Mot. Correct Record, ECF No. 45.
[2] Hensley Decl., ECF No. 42-1 at 3.
[3] *Id.* at 4; *see also* ECF No. 28 ¶¶ 75, 79, 85–86.
[4] ECF No. 28 ¶¶ 71, 73, 81.
[5] *Id.* ¶¶ 70–71.
[6] *Id.* ¶¶ 74–75.
[7] *Id.* ¶¶ 81–82.
[8] *Id.* ¶ 83.
[9] Decl. & Mot. for TRO/Prelim. Inj., ECF No. 18 ¶ 2.

Hill further states that instead of being placed in a mental health pod within SCI Phoenix, Defendants have placed him in a camera cell and in a non-mental health pod where he is harassed by other prisoners.[10] He asserts this, along with other restrictions imposed upon him, was done in retaliation for Hill filing grievances about certain Defendants' conduct.[11] Hill claims Defendants have imposed additional restrictions on him "for self harm," contrary to prison policy.[12] However, Hill is now housed in the specialized IMU/DTU, where he receives special attention for his mental health needs.[13]

Also housed in the IMU/DTU is inmate Derrick Gibson, who sent Hill letters asking him to "chill out on" and "pull up off of" CO Salwen, whom Gibson "need[s] . . . over here on L-unit."[14] In one letter, Gibson stated that he would "even have [CO Salwen] come talk to [Hill] and make sure that [Hill is] alright if [he] need[s] anything."[15] In the next, he stated, "Just chill . . . and if you need me or something just send word . . . to me A.S.A.P.!"[16] Hill fears Gibson and believes Gibson is going to kill him.[17] According to SCI Phoenix Superintendent Hensley, the IMU/DTU is the only unit that can accommodate the needs of Hill and Gibson, and prison officials are "unaware of significant circumstances that would require the need for separation between the two inmates."[18]

---

[10] *Id.* ¶¶ 4–5; *see also* Mot., ECF No. 13 at 5 (stating being placed in a camera pod after suicide attempt is contrary to prison policy, and other inmates who attempt suicide are not treated the same).
[11] ECF No. 14 at 11; ECF No. 18 ¶ 12.
[12] ECF No. 13 at 5–6.
[13] ECF No. 42-1 at 2.
[14] Exhibit F to Am. Compl., ECF No. 28-1 at 6.
[15] *Id.*
[16] *Id.* at 7.
[17] ECF No. 28 ¶ 129, 171; *see also* ECF No. 18 ¶ 13 ("I am in fear! I feel like I may have to defend myself against Defendant, Gibson.").
[18] ECF No. 42-1 at 4.

### B.    Physical Health

In addition to his struggles with mental illness, Hill suffers from back pain caused by an altercation that occurred on June 28, 2025, when CO Cavalari allegedly punched Hill in the head and face multiple times without provocation while Hill was restrained.[19] CO Gerlach also administered oleoresin capsacum on his face and head.[20] Several other COs were present and did not stop Cavalari or Gerlach.[21] As a result, Hill suffered a large lump on his forehead, headaches that lasted for one week, impaired vision in his right eye, neck pain, numbness in his left hand and wrist, lower back pain, and a large lump in the lower back.[22] Following the incident, Hill was taken to the medical department, where he was seen by Defendant Anne, a nurse and part of the medical staff at SCI Phoenix, who falsified his records by failing to document the extent of his injuries.[23]

Hill submitted additional Medical Sick Call Requests on July 14, July 18, July 21, July 26, August 1, August 14, and September 9, 2025,[24] and had additional medical examinations, where he was prescribed various medications, a back brace, and physical therapy for his back.[25] Hill attended physical therapy once but did not attend further appointments.[26] As a result, his physical therapy and pain medications were discontinued.[27] Additionally, Hill received a back brace for a time but after reviewing x-rays of his back in September 2025, the medical provider determined a back brace was no longer necessary.[28]

---

[19] ECF No. 28 ¶¶ 25–31.
[20] *Id.* ¶ 29.
[21] *Id.* ¶¶ 26–30.
[22] *Id.* ¶ 31.
[23] *Id.* ¶ 33.
[24] *Id.* ¶ 36.
[25] *Id.* ¶¶ 37, 39.
[26] ECF No. 58 at 3; ECF No. 42-1 at 3.
[27] ECF No. 42-1 at 3.
[28] ECF No. 42-1 at 3.

Hill is in the IMU, which has groups each inmate must attend so that they can be removed from Restrictive Release and returned to general population within five years.[29] To progress through the program, Hill must attend IMU group sessions, where he "must sit on a small steel stool, that lacks back support," and where he "must be hand-cuffed and chained to a table for two (2) hours or more."[30] Hill has asked for a plastic chair instead of the backless stool because the stool causes him excruciating pain.[31] If he fails to attend IMU groups, he "will be forced out of the IMU program and remain on the [Restrictive Release] list for the remainder of [his] incarceration."[32] On January 16, 2026, Hill received a "Review Sheet" indicating that it was recommended he "be processed as an IMU failure" because he has missed certain group sessions.[33] Hill does not want to be failed out of the IMU and "would really like to go to general population."[34]

## II.      Procedural History

Hill sued seeking a declaratory judgment that his Eighth, Fourth, and Fourteenth Amendment rights were violated, and that Defendants' actions constituted assault and battery under Pennsylvania law.[35] He also seeks injunctive relief, including specific medical treatments and accommodations and removal from "punitive segregation,"[36] and money damages.[37]

Hill moved for a temporary restraining order ("TRO") and preliminary injunction requiring Defendants "to provide physical therapy, back-brace, effective pain relieving medication, removal of the top bunk-bed, removal of the lump in my back, allow me to sit in a plastic chair when

---

[29] ECF No. 13 ¶ 20.
[30] *Id.* ¶¶ 21–22.
[31] *Id.* ¶ 23.
[32] *Id.* ¶ 25.
[33] Mem., ECF No. 43.
[34] *Id.*
[35] ECF No. 14 at 19–20; ECF No. 28 at 20.
[36] ECF No. 14 at 20; ECF No. 28 at 21.
[37] ECF No. 14 at 21; ECF No. 28 at 22.

attending groups, adequate mental health treatment, place me in the POC/SOU for attempted suicide/self harm – not non-mentally ill units, remove Defendant, Gibson from L/C pod and/or from me, stop threatening me with violence, allow me to file grievances and grievance appeals, and stop Defendant, Gibson from sending me letters of any kind."[38]

The Court initially scheduled a hearing on the Motion in January; however, after Defendants were served the Complaint and Motion, they moved for additional time to respond and asked the Court to vacate the hearing pending full briefing.[39] The Court granted the extension of time and vacated the hearing.[40] Defendants then filed a brief in opposition to the Motion on January 20, 2026.[41] The Court ordered Hill to respond by February 20, 2026,[42] which he timely did via a declaration filed on February 5, 2026.[43] The Court has determined it need not hold a hearing on the Motion because Plaintiff has not established that preliminary relief is warranted in this case.

## III.        Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders and preliminary injunctions. To establish preliminary injunctive relief is appropriate, a plaintiff must

---

[38] ECF No. 13 at 6.

[39] ECF No. 37. This Court has a Memorandum of Understanding with the Pennsylvania Department of Corrections ("DOC"), under which the Clerk of Court may request a waiver of service for DOC employee defendants. However, the Court ordinarily will not issue summonses in a case brought by a pro se plaintiff until after the complaint has been screened pursuant to 28 U.S.C. § 1915(e)(2)(B). Here, on October 29, 2025, although the Complaint was still subject to screening, the Court directed the Clerk of Court to send a copy of the Motion and Complaint to the Warden of SCI Phoenix and ordered a response by October 29, 2025, ECF No. 22, in the hope that the Motion could be more expeditiously resolved.

      However, Defendants did not receive or waive service in this case until December 19, 2025. They, therefore, had until January 5, 2026, to respond to the Amended Complaint. On January 2, 2026, Defendants requested an extension of time to respond to the Motion, for which they showed good cause given that Defendants had not yet been served process until after the previously imposed deadline to respond. Given the procedural complications of serving this Motion on Defendants, the Court declines to address Hill's arguments related to Defendants' timeliness of filing their Opposition. They sought and were granted additional time to respond, and the Court will consider the merits of both sides' positions.

[40] ECF No. 38.

[41] ECF No. 42.

[42] ECF No. 46.

[43] ECF No. 48. A mailed and scanned copy of the Declaration is also docketed at ECF No. 58.

provide a "clear showing" that (1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest. *Del. State Sportsmen's Ass'n*, *Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319–20 (3d Cir. 2020) (applying same standard to TRO). A plaintiff must "establish every element in [his] favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Preliminary injunctive relief is "not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, it is an "extraordinary remedy granted in limited circumstances." *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025) (quoting *Issa v. Sch. Dist.*, 847 F.3d 121, 131 (3d Cir. 2017)). Preliminary relief is "not a shortcut to the merits." *Del. State Sportsmen's Ass'n*, 108 F.4th at 197. The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Id.* at 200 (citation omitted). In other words, a preliminary injunction or TRO ordinarily keeps things as they are through discovery and until the case can be resolved.

Where a plaintiff seeks preliminary injunctive relief that goes beyond preserving the status quo, he is asking for "mandatory relief." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory relief would include a court order requiring a defendant to do something it was not already doing before the events of the lawsuit occurred. A plaintiff seeking mandatory relief has a "particularly heavy" burden. *Id.*; *see also Scott v. Aguleri*, No. 24-6077, 2025 WL 823946, at *4 (E.D. Pa. Mar. 13, 2025) (citing *Hope*, 972 F.3d at 320). A district court may only grant a mandatory preliminary injunction where the plaintiff's "right to relief [is] indisputably clear."

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (quoting *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)).

Additionally, in the prison setting, courts must exercise special caution when ordering injunctive relief. When an injunction would interfere with the administration of a prison, courts must give "appropriate consideration . . . to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison administrators are entitled to "substantial deference" in determining the best ways to preserve order and maintain security within prisons. *Beard v. Banks*, 548 U.S. 521, 528 (2006). These concerns are especially present in a request for mandatory, proactive injunctive relief. *Easley v. Tritt*, No. 1:17-CV-930, 2019 WL 1497054, at *3 (M.D. Pa. Mar. 11, 2019) (quoting *Goff v. Harper*, 60 F.3d 518, 520 (3d Cir. 1995)).

## IV.    Discussion

The preliminary relief Hill seeks relates to his Eighth Amendment deliberate indifference claims. Hill seeks mandatory injunctive relief primarily in the form of medical treatments and accommodations for his back pain. Hill also seeks a change in his housing assignment, but those requests have been inconsistent. For example, Hill indicates both that he does not want to be housed in the same unit as "non-mentally ill inmates," but also that he wants to go to general population.[44]

---

[44] *See* ECF No. 13 at 6 (seeking TRO "plac[ing] me in the POC/SOU for attempted suicide/self harm – not non-mentally ill units"); ECF No. 28 at 21 (requesting injunction ordering Defendants Yodis and Terra to "[r]elease Hill from punitive segregation (IMU/DTU), and place Hill in general population"); ECF No. 58 at 3 (arguing Hill's placement in non-mentally ill units constituted deliberate indifference to his mental health needs and indicating non-mentally ill inmates must not be housed with mentally ill inmates); ECF No. 43 (stating he "would really like to go to general population").

Because Hill seeks mandatory relief, his burden is "particularly heavy," and he must show his right to relief is "indisputably clear." *Trinity Indus.*, 735 F.3d at 139 (citations omitted). Hill has not carried his burden to show he is likely to succeed on the merits of his Eighth Amendment claims, so his motion for preliminary relief fails with the first step of the analysis, and the Court need not examine the remaining elements. *See P.C. Yonkers*, 428 F.3d at 508.

To establish a likelihood of success on the merits, the plaintiff must show a "'reasonable probability' of success—odds that are 'significantly better than negligible but not necessarily more likely than not.'" *Veterans Guardian*, 133 F.4th at 218 (citation omitted). To state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, a plaintiff must show (1) deliberate indifference on the part of prison officials and (2) the prisoner's medical needs are objectively serious. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).

"[M]ere allegations of malpractice" or "mere disagreement as to the proper medical treatment" are insufficient. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."). By contrast, the denial of reasonable requests for medical treatment, or a delay of treatment for non-medical reasons, may support a deliberate indifference claim. *Lanzaro*, 834 F.2d at 346. "[D]eliberate indifference is [also] demonstrated when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment." *Id.* (citation modified).

Additionally, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Woodell v. Wenerowicz*, No. 18-1098, 2019 WL

9

4139264, at *19 (E.D. Pa. Aug. 30, 2019) (citing *Gonzalez v. De Lasalle*, 703 F. App'x 62, 66 (3d Cir. 2017)) ("[A]n officer's denial of a prisoner's grievance does not establish deliberate indifference when said prisoner is under the care and supervision of medical professionals."). Therefore, a non-medical prison official "cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A medical need is "serious" where it "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.2d at 347 (citation omitted). A condition may be serious if denial of treatment would inflict "unnecessary and wanton" pain or cause the inmate to suffer lifelong effects. *Id.*

For his Eighth Amendment claims, Hill seeks to alter the status quo and asks the Court to grant him the relief he seeks in his Complaint. Specifically, with respect to his physical health, Hill seeks a TRO "requiring Med-Defendants and/or DOC, Defendants to provide physical therapy, back-brace, effective pain relieving medication, removal of the top bunk-bed, removal of the lump in my back, [and] allow me to sit in a plastic chair when attending groups."[45] With respect to his mental health, Hill seeks a TRO "plac[ing] me in the POC/SOU for attempted suicide/self harm –

---

[45] ECF No. 13 at 6 ¶ 47.

not non-mentally ill units."[46] However, Hill submitted a memorandum to the Court dated January 18, 2026, stating he "would really like to go to general population."[47]

Hill has not met his "particularly heavy" burden to show he is likely to succeed on the merits, so his right to preliminary relief is not "indisputably clear." *Trinity Indus.*, 735 F.3d at 139.

### A.    Deliberate Indifference to Hill's Back Pain

Hill alleges after CO Cavalari physically assaulted him, he was taken to the medical department and evaluated by Defendant Anne, "who refused to treat all of Hill's injuries and failed to document the extent of Hill's injuries in the medical records in order to cover up the assault" and falsely documented that Hill assaulted CO Cavalari.[48] During multiple sick calls, Hill complained of back pain, a lump in his back, blurry vision in his right eye, headaches, and numbness in his left hand.[49] Hill requested x-rays, an MRI, pain medication, a back brace, and removal of the lump in his back.[50] Hill was prescribed and received an assortment of pain medications, a muscle relaxer, back brace, and x-rays.[51]

According to the Declaration of Deputy Superintendent Charles Hensley, Hill was ordered physical therapy in September 2025, attended once, and then failed to appear for subsequent appointments.[52] After Hill failed to attend, his physical therapist discontinued the physical therapy, and Hill's pain medications were discontinued.[53] Furthermore, Hill did have a back brace until

---

[46] ECF No. 13 at 6 ¶ 47.
[47] ECF No. 43.
[48] ECF No. 28 at 6 ¶ 33.
[49] *Id.* ¶¶ 37, 38.
[50] *Id.* ¶ 39.
[51] *Id.* ¶ 40.
[52] ECF No. 42-1 ¶ 8.
[53] *Id.* Hill argues he was never informed that he was to continue seeing the physical therapist, nor was he given notice that physical therapy would be discontinued. ECF No. 48 at 3. He also argues that he "is in constant back pain and is forced to sit in groups on steel stools without any back support." *Id.*

September 2025, when the medical provider reviewed his x-rays and determined a back brace was no longer clinically necessary.[54]

Both parties' filings show that Hill has received some treatment for his back injury, including x-rays, a back brace, and physical therapy. Hill merely disagrees with the medical professionals' decisions. This is generally insufficient to state a deliberate indifference claim. *See Lanzaro*, 834 F.2d at 346–47 (explaining deliberate indifference may be found where prison authorities deny reasonable requests for treatment, intentionally refuse care where they know of the need, delay treatment for non-medical reasons, erect arbitrary and burdensome procedures, condition medical services on payment, or prevent an inmate from receiving treatment). Hill has not asserted that Defendants have denied him treatment outright or that they have prevented him from accessing a physician capable of providing treatment. Rather, he contends he has been seen by medical providers, those medical providers ran tests and prescribed treatments, and they followed up on those treatments. Mere disagreement with their treatments is not sufficient to establish an Eighth Amendment violation against those medical professionals.

Furthermore, the prison officials are justified in believing that the care Hill has received and is receiving from the medical professionals is adequate. *Spruill*, 372 F.3d at 236. Therefore, Hill is unlikely to succeed on the merits of his deliberate indifference to medical needs claim against either the medical providers or the prison officials.

---

[54] ECF No. 42-1 ¶ 8.

### B.    Deliberate Indifference to Mental Health Needs

Hill asserts he was retaliated against after failed suicide attempts.[55] He claims he was placed in the "SOU" in a "camera cell on L/D pod" instead of a mental health pod.[56] Further, Hill asserts he is entitled to mental health treatment, which he is not receiving.[57] Hill currently takes Abilify and Zoloft.[58] Hensley affirmed that Hill is currently housed in the specialized mental health housing unit, "receives special attention for his mental health needs and has access to medical services."[59] Additionally, Hill has been placed in a POC on multiple occasions, including most recently from January 7, 2026, through January 12, 2026.[60] Hill has also seen a psychiatrist on multiple occasions.[61]

Accordingly, both parties' filings show Hill is receiving mental health treatment and he is already housed in a unit for individuals who require intensive mental health treatment. He has been placed in a POC unit when necessary and will be placed there again if needed.[62] Therefore, he is already receiving the relief he has requested in his Motion. With respect to Hill's request to be placed in general population, this Court shall not order Defendants to remove him from the unit where he is receiving mental health treatment because that would substitute the Court's judgment for the medical professionals' and could put him at greater risk. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will disavow any attempt to second-guess the propriety or adequacy of a

---

[55] ECF No. 28 at 11.
[56] *Id.*
[57] *See id.* ¶ 91.
[58] *Id.* ¶ 100.
[59] ECF No. 42-1 ¶¶ 3–4.
[60] *Id.* ¶ 12.
[61] *See* ECF No. 28 ¶¶ 114–16.
[62] ECF No. 42-1 at 4 ¶¶ 12–13.

particular course of treatment, which remains a question of sound professional judgment." (citation modified)).

## V.        Conclusion

With respect to the preliminary relief he seeks, Hill has failed to establish he is likely to succeed on the merits of his claims. The Court cannot, at this stage, second guess the treatments Hill is receiving for either his back pain or his mental illness by ordering Defendants to provide different treatments, accommodations, or housing arrangements. Hill's motion must, therefore, be denied.

An appropriate Order follows.